JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DEREK R. OWENS (CABN 230237)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California  94102
    Telephone: (415) 436-6488
    Fax: (415) 436-7234
    Email: Derek.Owens@usdoj.gov

Attorneys for Applicant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MONTRECE LAMONT GORDON, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | No. CR 07-0729 PJH <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Hearing: April 16, 2008 <br> Time: 1:30 p.m. <br> Courtroom: 3, 17th Floor <br> Hon. Phyllis J. Hamilton |

## I. INTRODUCTION

On January 30, 2008, defendant Montrece Lamont Gordon pled guilty to one count of being a Felon in Possession of a Firearm, each in violation of 18 U.S.C. § 922(g)(1). This Court has set April 16, 2008, at 1:30 p.m. as the date for judgment and sentencing. The government submits the following sentencing memorandum in order to advise the Court of the government's sentencing guideline calculations, any objections to the presentence report ("PSR"), and its sentencing recommendation.

## II. BACKGROUND

A.  *Defendant's Offense Conduct.*

On or about 12:00 a.m., September 7, 2007, San Francisco Police ("SFPD") officers responded to a report by a witness of a robbery that occurred near the intersection of 21st Street and Shotwell Street in the Mission district of San Francisco. The report indicated that a victim was walking down the street when he was approached by four individuals. One of those individuals suddenly struck the victim in the face, knocking him to the ground. One of the suspects stated to the victim, "give me your wallet and cell phone," then took the victim's wallet, cell phone, and money, and fled the scene.

*The Suspect Description*

The witness described the suspect who struck the victim as being a heavy-set, black male wearing a black shirt, black jeans and glasses, who was accompanied by one other male, and two females.  The witness also told the police that all four suspects were walking northbound on Shotwell Street.

*The Stop and Chase*

After hearing notification of the robbery from SFPD dispatch, Officers Riboli and Perdomo responded to the area. While driving southbound on Shotwell Street, the officers saw a man matching the description of a heavy-set, black male wearing a black shirt, black jeans and glasses, later identified as Montrece Lamont Gordon ("Gordon"). Gordon was walking northbound on Shotwell Street, near 18th Street, and he was in the company of another male and two females.

The officers parked the marked patrol vehicle on the corner of 18th Street and Shotwell Street, and, while in full uniform, approached the four suspects. Officer Riboli approached Gordon, while Officer Perdomo attempted to make contact with the male and females who were with Gordon. Gordon immediately ran from the scene, and because he matched the scene of the main suspect, Officers Riboli and Perdomo both followed in pursuit eastbound on 18th Street. Officer Perdomo yelled several times to stop, but Gordon kept running. While pursuing Gordon, mid-block between 18th Street and Folsom Street, Officer Perdomo saw Gordon reach under his

shirt and into his waistband with his right hand. Gordon removed what appeared to be a firearm, and throw it over the fence of the PG&E parking lot near the corner of 18th Street and Folsom Street. Officer Perdomo watched as the firearm left Gordon's hand, traveled over the fence, and hit a solar panel before it landed on the ground in the PG&E parking lot.

*The Arrest of Gordon*

Officers Riboli and Perdomo caught up to Gordon and attempted to take him into custody. Gordon resisted the officers and it took additional officers to arrive and assist in handcuffing Gordon. Gordon has a listed height of 5'10", and weight of 275 pounds. Officer Ruetti recovered the fully loaded firearm from the PG&E parking lot. It was identified as a Smith & Wesson, .38 caliber revolver.

*Attempt to Identify Robbery Suspect*

The officers conducted a "cold show" where the victim of the robbery was able to get a look at Gordon in person. The victim stated, "that isn't him." The witness/anonymous caller who reported the robbery via telephone, refused to cooperate any further with authorities.

### III. SENTENCING GUIDELINES CALCULATIONS

A.  Offense Level Computation and Criminal History Computation
1.  Base Offense Level, U.S.S.G. § 2K2.1(a)(4):        20
2.  Specific offense characteristics:                    0
3.  Acceptance of Responsibility, U.S.S.G. § 3E1.1:    -3
4.  Adjusted offense level:                             17

The parties have agreed to the adjusted offense level of 17 based on the above computation. The government concurs with the computation by U.S. Probation that includes a total number of criminal history points of 15, and a Criminal History Category of VI.

### IV. ARGUMENT

THE COURT SHOULD IMPOSE A SUBSTANTIAL CUSTODIAL SENTENCE.

The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other

1  correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). *United States v. Carty*, --- F.3d ----, 2008
2  WL 763770, March 24, 2008.

3      At sentencing, the Court must begin by determining the applicable Guidelines range.
4  The range must be calculated correctly. *Id*. In this sense, the Guidelines are "the 'starting point
5  and the initial benchmark,'" *United States v. Kimbrough*, 128 S.Ct. 558, 574 (quoting *United
6  States v. Gall*, 128 S.Ct. 586, 596), and are to be kept in mind throughout the process, *Gall*, 128
7  S.Ct. at 596-97 n. 6.

8      After hearing from the parties' positions, the district court should then consider the §
9  3553(a) factors to decide if they support the sentence suggested by the parties, i.e., it should
10  consider the nature and circumstances of the offense and the history and characteristics of the
11  defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of
12  sentence and the sentencing range established in the Guidelines; any pertinent policy statement
13  issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among
14  defendants with similar records who have been found guilty of similar conduct; and the need to
15  provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7); *Gall*, 128 S.Ct. at 596-97 n. 6.

16      A.    <u>The Defendant Has Earned A Sentence of 51 Months in Custody.</u>

17      The Guideline range for the offense conduct is 51-63 months. The government
18  recommends a low-end sentence of 51 months in custody. The defendant's conduct is very
19  serious and 51 months in custody represents a reasonable and appropriate sentence for his
20  actions. He has earned this substantial custodial sentence for the following reasons:

21      1.    <u>"the history and characteristics of the defendant"</u> 18 U.S.C. § 3553(a)(1)
22      The history of the defendant includes criminal conduct that has occurred on multiple
23  occasions, and has spanned over twenty years. From the time he was twelve years old he has
24  committed crimes during his narrow windows of freedom. He has no less than four juvenile
25  convictions and seven adult convictions, and has spent most of the past twelve years
26  incarcerated. Keeping a firearm out of the hands of someone with such a history and
27  characteristics is clearly in the interests of society.

28

CR 07-0729 PJH                                       4

That said, there are some factors that militate in the defendant's favor. One of those is the strong support that the defendant has from his wife and family. It is a rare case that defendants facing similar federal charges can claim to have a stable home and family life to rely on when released.

An additional characteristic that favors a low-end sentence rather than a high-end sentence, is the defendant's quick acceptance of responsibility in this case. The day after he was arraigned on the present charges, he indicated through his counsel that he was prepared to enter guilty plea. Although uncommon, such acceptance is an indicator that the defendant is serious in taking his punishment and moving on to make reforms in his life. Additionally, such acceptance conserves the resources of the justice system.

        2.      <u>the nature and circumstances of the offense</u>" 18 U.S.C. §3553(a)(1)

The instant offense was committed less than two years since defednant was most recently released on parole. The restriction that he violated is a simple one: defendant is prohibited from possessing a firearm. While violating this simple restriction, he was out late at night in San Francisco and had some level of involvement with a group of individuals who were reported to have robbed a pedestrian. Although the evidence is not strong enough to incriminate defendant for that robbery, it is troubling that he would be involved with such a group, while possessing a gun, and while on parole. These circumstances and the nature of this offense are disturbing and should be taken seriously by this Court when imposing a sentence.

        3.      <u>"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense</u>" 18 U.S.C. §3553(a)(2)(A)

The Court should find that a substantial period of custody is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). As stated above, the instant offense occurred less than two years after he was paroled for his felony conviction for burglary. Such conduct is consistent with his history over the past twenty years, which is consistently committing crimes soon after

release and during short windows of freedom.  These actions show defendant's disregard for the parole restrictions that are placed on him and also his lack of respect for the rule of law.

    4.  "<u>to protect the public from further crimes of the defendant</u>" 18 U.S.C. § 3553(a)(2)(C)

As noted above, the defendant has a track record of menacing behavior going back twenty years, and combined with the possession of a firearm creates a dangerous concoction that is a threat to the community.  A substantial custodial sentence should be imposed to protect the public from the further crimes of the defendant.

Although his family life and upbringing were challenging, those circumstances cannot serve as a discount or a reason to ignore his criminal behavior and his lack of respect for the rule of law.   Keeping a firearm out of the hands of a person with his history is clearly in the interests of society.  For someone with such a character to ignore this law is a major offense, and the public is at risk everyday this person chooses to violate this law.  By imposing a substantial period of confinement, the Court will send a message to address the seriousness of the offense, promote respect for the law, and provide just punishment.

## VI. CONCLUSION

For the reasons set forth above, the government stands by the recommendation in the plea agreement and recommends the Court impose a low-end sentence of 51 months in custody followed by three years of supervised release.

DATED: April 9, 2008         Respectfully submitted,

                 JOSEPH P. RUSSONIELLO
                 United States Attorney

                 /s/ Derek R. Owens
                 DEREK R. OWENS
                 Assistant United States Attorney